**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Reynolds, | No. CV-22-08098-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Kilolo Kijakazi, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kimberly Reynolds's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for social security disability benefits. (Doc. 1). The appeal is fully briefed, (Doc. 15, Doc. 16, Doc. 17). The Court will now rule.

## I.   BACKGROUND

The issue on appeal is whether the administrative law judge ("ALJ") committed harmful error by giving little weight to the opinion of treating physician Dr. Rajiv Jetly. (Doc. 15).

### a.   Factual Overview

Kimberly Reynolds ("Claimant") filed for a period of disability and disability insurance benefits ("DIB"), under Title II and Title XVIII in July of 2015. (*See* Doc. 12-13 at 13). Claimant asserted that she had a number of impairments including degenerative disc disease and migraine headaches. (*See* Doc. 15 at 6). She alleges that her disability began on April 1, 2014. (*See* Doc. 12-13 at 13). She was last insured for DIB September

1    30, 2015. (*Id.* at 14). Her claim was initially denied on September 3, 2014, and again upon

2    reconsideration in February of 2016. (*See id.* at 13). At her first hearing before an ALJ, she

3    was denied benefits. That decision was eventually overturned by this Court on June 20,

4    2020. (*See* Doc. 15 at 4). The case was remanded for further administrative proceedings.

5    (*See* Doc. 15 at 4). A second ALJ hearing was held in December of 2020. (*See* Doc. 12-13

6    at 13). Her claim was again denied by the ALJ. (Doc. 15 at 5). The SSA Appeals Council

7    then affirmed the ALJ's opinion and adopted that decision as the final decision of the

8    Commissioner. (*See id.*). Claimant now appeals that decision.

9             **b.  The SSA's Five-Step Evaluation Process**

10        To qualify for social security benefits, a claimant must show she "is under a

11    disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically

12    determinable physical or mental impairment that prevents her from engaging "in any

13    substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process

14    for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1).

15    Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

16        At the first step, the ALJ determines whether the claimant is "doing substantial

17    gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial

18    gainful activity is work activity that is both "substantial," involving "significant physical

19    or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

20        At the second step, the ALJ considers the medical severity of the claimant's

21    impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically

22    determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe

23    impairment" is one which "significantly limits [the claimant's] physical or mental ability

24    to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and

25    aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

26        At the third step, the ALJ determines whether the claimant's impairment or

27    combination of impairments "meets or equals" an impairment listed in Appendix 1 to

28    Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.

*Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Looking to the first step, the ALJ found that Claimant had not engaged in substantial gainful activity between the time of her alleged onset date and her date last insured. (Doc. 12-13 at 16).

Applying step two, the ALJ found that Claimant has three severe impairments under 20 C.F.R. § 404.1520(c): degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and migraine headaches. (*Id.* at 16). The ALJ also found that she had medically determinable depressive disorder, but that this impairment did not cause more than a "minimal limitation in the claimant's ability to perform basic mental work activities ...." (*Id.*). Finally, the ALJ determined that her allegation of irritable bowel syndrome was not credible because there were no medical signs or laboratory findings substantiating this claim. (*See id.*).

At the third step, the ALJ found that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments ...." (*Id.* at 18). In regard to Claimant's degenerative disc disease, the ALJ found that this impairment did not meet the listed impairment because there was no evidence of "nerve root compression" coupled with any "abnormal findings ...." (*Id.*). He also noted that Claimant had no issue ambulating effectively, as her examiners generally noted a normal gait. (*Id.*). Finally, turning to her migraine headaches, these did not meet or medically equal the listing of "cluster headaches" because she told her treatment provider that she only experienced one migraine per month. (*Id.* at 19). Furthermore, these headaches did not cause marked limitations in any key areas. (*Id.*). Consequently, none of her impairments met or equaled a listed impairment.

At the fourth step, the ALJ found that Claimant had the Residual Functional Capacity ("RFC") to perform sedentary work. (*Id.*). He found that although her medically determinable impairments could be reasonably expected to cause the alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the evidence in the record. (*Id.* at 20). Medical reports throughout the record undercut her subjective descriptions of pain and intensity, the ALJ found. (*See id.*). Further, reports of her daily activities did not support "the reported severity of her severe physical impairments." (*Id.* at 21). While giving partial weight to the opinions of non-treating physicians, the ALJ gave little weight to the opinions of the treating physician because, among other things, "they were inconsistent with the examination notes throughout the record[,]" were "inconsistent with the claimant's activities of daily living[,]" and were largely conclusory. (*Id.* at 23).

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 24). Because Claimant could perform the full range of sedentary work, with some limitations, the ALJ found that Claimant could perform the jobs of telephone solicitor, document preparer, or leaf tier. (*Id.* at 24). Consequently, the ALJ found that Claimant was not disabled. (*Id.* at 25).

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). Substantial evidence means "more than a scintilla ... but less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Under this standard, courts look at "an existing administrative record and ask[] whether it contains sufficient evidence to support the [ALJ's] ... factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). This Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility, however. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, this Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

When specifically assessing DIB claims, the ALJ's inquiry is limited to determining whether the claimant had a disability in the period between the alleged onset date and the date last insured. The main source of evidence for this is medical records and testimony from or about this period. One key piece of evidence is the opinion of a treating physician. When looking at such opinions, ALJs are required to consider them in conjunction with the rest of the relevant evidence in the record. *See* 20 C.F.R § 404.1527(b). For claims brought before March 27, 2017, the opinions of treating sources are given more weight

than are the opinions of other sources. *See* 20 C.F.R. § 404.1527. If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in" the case record, it is given controlling weight. *Id.* § 404.1527(c)(2). If it is not given controlling weight, the ALJ will assess it based on the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, the specialization of the physician, and other relevant factors. *See id.* § 404.1527(c). Furthermore, when rejecting the opinion of a treating or examining doctor that is contradicted by another doctor's opinion, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).[1] Additionally, when assessing conflicting medical opinions, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.* The ALJ is entitled to look to all parts of the record when assessing a treating physician's opinion. Beyond conflicting medical testimony, an ALJ can also reject such an opinion when there is a conflict between that opinion and a claimant's daily activity level. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Finally, "[a]n ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight" to give them. *Id.*

## III.   DISCUSSION

Claimant asserts that the ALJ erred by rejecting the opinion of her treating physician. (Doc. 15 at 6). She maintains that none of the four reasons provided by the ALJ for rejecting her treating physician's testimony were adequate. (*See id.* at 15). The ALJ assigned little weight to her treating physician's opinion because 1. Dr. Jetly's statements were inconsistent with examination notes in the record; 2. Claimant was doing well on

---

[1] A different standard applies for the rejection of uncontradicted treating physician testimony. In that circumstance, the ALJ must have clear and convincing reasons supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216. In this case Dr. Jetly's opinion was contradicted, as Claimant recognizes. (*See* Doc, 15 at 9). Thus, the lighter "specific and legitimate" standard is appropriate.

conservative treatments, and therefore did not have impairments as severe as Dr. Jetly stated; 3. the Doctor's medical statements were inconsistent with Claimant's daily activities; and 4. the Doctor's opinions were conclusory. (*See id.* at 12–14).

### a. Credibility of treating physician's statements

The ALJ found that Dr. Jetly's opinions were inconsistent with other evidence from the record. (*See* Doc. 12-13 at 23). Therefore, he did not give it controlling weight. Instead, he assessed it under the factors set forth in 20 C.F.R. §§ 404.1527(C)(2)(i)–(ii), (c)(3)–(c)(6). He ultimately assigned the opinion little weight because it was conclusory and inconsistent with other evidence. (*See id.*). This Court finds that the ALJ did provide specific and legitimate reasons, supported by substantial evidence, for assigning little weight to Dr. Jetly's opinions.

Claimant first contends that there were no inconsistencies between Dr. Jetly's opinions and other examination notes. (*See* Doc. 15 at 12). She asserts that the fact that she does not use a cane or other assistive device and was described as having a normal gait is not inconsistent with Dr. Jetly's statement that she has "abnormal gait following repetitive use of her spine." (*Id.*). Dr. Jetly never prescribed the use of a cane, she maintains. Further, she contends that she never engaged in repetitive use of her spine during the examinations in which she was found to have a normal gait. Thus, she claims, Dr. Jetly's conclusions are not inconsistent with the record.

Yet, the ALJ pointed to numerous exams in which she was described as having a normal gait. (*See* Doc. 12-13 at 23). He noted that this was in conflict with Dr. Jetly's assertion that Claimant was "unable to stand and/or walk for more than one hour in an eight-hour workday[.]" (*Id.*). Furthermore, the ALJ found that she did not need a cane to walk and did not use any other type of assistive device. Although Dr. Jetly may not have prescribed the use of a cane, the fact that she did not use any type of assistive device is evidence that she did not have issues walking before her date last insured. Furthermore, that multiple examiners noted throughout the record that she had a normal gait is also evidence that her impairments did not cause major walking issues for her. This evidence

contradicts the conclusions of Dr. Jetly. Consistency between the medical opinion and the record as a whole is one of the standards that the ALJ must look to in assigning weight to a medical opinion. *See* 20 C.F.R. § 404.1527(C)(4).  Here, there was evidence in the record, which the ALJ relied upon, that was in contradiction with Dr. Jetly's opinions. Consequently, the ALJ was justified in relying on these inconsistencies as a basis for assigning little weight to Dr. Jetly's opinion.

Plaintiff also challenges the ALJ's reliance on the fact that her symptoms improved dramatically after conservative treatments such as injections. (*See* Doc. 15 at 13). She asserts that spinal injections are not conservative and that they only provided temporary relief. (*See id.*). Thus, she maintains, the temporary relief provided by the injections is not a valid basis for rejecting the testimony of Dr. Jetly. (*See id.*).

Again, this Court finds that the effectiveness of the injections, understood in the larger context of how they are used in the pain management process, constitutes substantial evidence to support the ALJ's decision to assign little weight to Dr. Jetly's opinion. As the ALJ noted earlier in the RFC, after receiving two medial branch block injections, Claimant's pain decreased by sixty-percent. (*See* Doc. 12-13 at 21). In a follow up visit after the injections, the ALJ stated that Claimant's treating provider "did not note any abnormal findings, aside from some tenderness upon palpitation of her lumbar spine[.]" (*Id.*). Further, she had no issues with her gait at that time. (*See id.*). The treatments were so effective, the ALJ stated, that she did not receive treatment for another nine months. This is substantial evidence that her pain and symptoms could be managed and were not as severe as Dr. Jetly asserted.

Furthermore, as the ALJ noted, the medial branch block injections were part of a larger pain treatment plan that was quite effective in reducing her pain. (*See id.*). Because the injections were so effective, Claimant's provider "indicated that she was an excellent candidate for radiofrequency ablation[.]" (*Id.*). This procedure led to a seventy-percent reduction in pain that lasted more than one-and-a-half-years. (*See id.*). It was the combination of the injections and the radiofrequency ablation procedure that led to the

1    dramatic reductions in her pain. The ALJ found these procedures to be both conservative

2    and effective. He took their success to suggest that "the claimant's lumbar pain was not as

3    severe as alleged throughout" her application for benefits. (*Id.*). This Court finds that this

4    too was a valid basis for rejecting Dr. Jetly's opinion.

5          Third, Claimant asserts that the ALJ should not have relied on summaries of her

6    daily activities to reject Dr. Jetly's opinions because those summaries did not include times

7    spent or other quantitative information that would allow the ALJ to determine whether she

8    could "sustain basic work activities on a regular and continuing basis[.]" (*See* Doc. 15 at

9    14). Furthermore, she contends that these were "basic chores" that were not inconsistent

10   with the limitations identified by Dr. Jetly. Thus, she maintains, this daily activity evidence

11   did not contradict her treating physician's opinions.

12         Claimant's argument here is unavailing. As numerous cases from the Ninth Circuit

13   have affirmed, "[a] conflict between a treating physician's opinion and a claimant's activity

14   level is a specific and legitimate reason for rejecting the opinion." *Ford*, 950 F.3d at 1155.

15   The ALJ found that Claimant engaged in a number of activities that were inconsistent with

16   the limitations found by Dr. Jetly. As the ALJ noted, throughout her day, claimant did

17   numerous household chores, prepared meals, went shopping, cared for pets, and maintained

18   a garden. (*See* Doc. 12-13 at 23). Furthermore, the evidence cited by the ALJ described her

19   daily routine and included her own testimony as to how long she engages in those activities.

20   (*See* Doc. 12-9 at 101; Doc. 12-10 at 169). This daily activity evidence is thus a valid basis

21   for the ALJ's decision to assign little weight to Dr. Jetly's opinions.

22         Finally, Plaintiff states that an ALJ cannot reject medical testimony for being

23   conclusory because there is no law or regulation requiring a medical opinion to tie specific

24   evidence to specific limitations. (*See* Doc. 15 at 14). She also asserts that all medical

25   opinions are definitionally conclusory because they are merely judgements. (*See id.*). She

26   goes so far as to state that "[e]ven if a medical opinion lacks an explanation of any kind,

27   there is no basis for asserting a medical source is required to indicate what specific evidence

28   was relied on in forming each portion of a medical opinion ...." (*Id.*). Finally, she claims

1   that Dr. Jetly did provide detailed explanations of the reasons Claimant was limited in the

2   ways that he indicated. (*See id.* at 15).

3         Here as well, the ALJ was justified in relying on the conclusory nature of Dr. Jetly's

4   opinions to assign them little weight. Although under the pre-2017 regulations the ALJ

5   should give more weight to the opinions of treating physicians, he is not required to take

6   those opinions at face value. One of the key factors for assessing treating physician

7   opinions is supportability. As the regulations state "[t]he better an explanation a source

8   provides for a medical opinion, the more weight we will give that medical opinion." 20

9   C.F.R. § 404.1527(C)(3). Further, the ALJ "may take into account the quality of the

10  explanation when determining how much weight" to give it. *Ford*, 950 F.3d at 1155. Thus,

11  although a medical provider is not required to tie specific evidence to specific limitations,

12  those that do will receive more weight for their opinions. Here, the ALJ found that Dr. Jetly

13  "did not indicate the specific evidence he relied on in forming each portion of his opinions."

14  (Doc. 12-13 at 23). While Dr. Jetly may have provided some general explanation, the fact

15  that he was not more specific in his opinion was a valid reason for the ALJ to give it little

16  weight. This, in combination with all of the other specific and legitimate reasons discussed

17  above, is a valid basis for assigning little weight to the opinions of Dr. Jetly. Therefore,

18  this Court finds that The ALJ did not commit error by largely rejecting the opinions of

19  Claimant's treating physician.

20  **IV.   CONCLUSION**

21        Accordingly,

22        **IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

23        **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

24  accordingly.

25        Dated this 12th day of July, 2023.

26

27

28

James A. Teilborg
Senior United States District Judge